#### IN THE UNITED STATES DISTRICT COURT

#### FOR THE DISTRICT OF NEW MEXICO

**RONNIE F. MUÑOZ,**

       **Plaintiff,**

**vs.**                                                               **No.  01cv1148 DJS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

#### MEMORANDUM OPINION

      This matter is before the Court on Plaintiff's (Muñoz') Motion to Reverse and Remand for a Rehearing **[Doc. No. 8]**, filed July 1, 2002, and fully briefed on July 29, 2002.  The Commissioner of Social Security issued a final decision denying Muñoz' application for disability insurance benefits and supplemental security income.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

#### I.  Factual and Procedural Background

      Muñoz, now forty-one years old, filed his application for disability insurance benefits and supplemental security income on August 17, 1999, alleging disability since December 10, 1997, due to hepatitis, diabetes, pancreatitis, peptic ulcer disease, gunshot and knife wound residuals to the leg and lung, occasional knee effusion, hypertension, right shoulder range of motion deficiency, episodic knee instability, anxiety and depression.  Muñoz has an eight grade education and past relevant work as a construction worker, nurse's aide, janitor, assembler, warehouseman,

and forklift operator.  On February 7, 2001, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Muñoz' alcoholism, hepatitis, diabetes, peptic ulcer disease, hypertension, a right shoulder range of motion deficiency, an episodic knee instability and the affects of depression and anxiety were severe impairments but did not "meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  Tr. 19.  Specifically, the ALJ reviewed Listings 1.03 (musculoskeletal), 2.02-2.04 (impairment of visual acuity), 4.04 (ischemic heart disease), 5.04 (peptic ulcer disease), 5.05 A-F (chronic liver disease), 9.08 A-D (diabetes mellitus), 6.02 (impairment of renal function), 11.01 (neurological impairment), 11.04 A and B (central nervous system vascular accident), 12.04 (affective disorders) and 12.06 (anxiety related disorders).  The ALJ further found Muñoz retained the residual functional capacity (RFC) to perform "a restricted range of light work."  Tr. 22.  As to his credibility, the ALJ found Muñoz "was not a credible witness and that his recitations of his conditions [were] not accurate."  *Id.*  Muñoz filed a Request for Review of the decision by the Appeals Council.  On August 29, 2001, the Appeals Council denied Muñoz' request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Muñoz seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Muñoz makes the following arguments: (1) the ALJ's mental impairment findings are contrary to law and the evidence; and (2) the ALJ's credibility determination is not supported by the evidence and is contrary to law.

## A.  Mental Impairment

Muñoz contends the ALJ erred when he adopted the findings of Dr. Gabaldon, the agency's non-examining psychologist and dismissed the findings and conclusions of the consultative examiner, Dr. Traweek, also a psychologist. In his decision, the ALJ found as follows:

> Mr. Muñoz was given a psychological examination in December 1999 by A. Traweek, Ph.D. Mr. Muñoz related increased symptoms of social isolation, panic attacks and agoraphobia. However, he was described as alert, lucid, responsive and oriented. His thought processes were logical, goal-directed and coherent with no psychotic features. Dr. Traweek considered Mr. Muñoz to be depressed. He assessed limitations in Mr. Muñoz short-term memory, concentration, social functioning, and adaptability. However, Dr.

> Traweek also noted that Mr. Muñoz was in only early partial remission of alcohol dependence which would interfere with his functioning in a work setting. Dr. Traweek's opinion that if Mr. Muñoz terminated his substance abuse only minimal improvement would occur is speculative given the problems this activity has given Mr. Muñoz in the past and is not fully credited.
>
> I also adopt the **non-examining state agency mental health specialist's evaluation** of Mr. Muñoz's mental status in regard to this examination and his other records. When examined under Sections 12.04, 12.06, and 12.09 of the regulations, his **activities of daily living are no more than "slightly" limited**, as evidenced by the level of domestic functionality he related to Dr. Traweek. Mr. Muñoz's reports of social isolation and uncomfortableness around others equates to a **"moderate" limitation in social functioning**. Dr. Traweek concluded that Mr. Muñoz's memory and concentration were impaired. Accordingly**, concentration, persistence and pace are "often" deficient.** Episodes of **deterioration and decompensation have occurred "once or twice** ." Mr. Muñoz does not have a complete inability to function outside his home. Again, substance abuse is very likely contributory to his problems.
>
> However, consideration of the combined effects of these limitations induce vocational restrictions on Mr. Muñoz's ability to perform acts requiring concentration and the ability to get along with people. I agree with the mental health's consultant's assessment that he could do work that involves basic instructions and does not have much public or supervisory interaction.

Tr. 20-21 (citation to record omitted)(emphasis added). It is apparent from the ALJ's decision that the ALJ did not disregard Dr. Traweek's opinion, but considered it and relied on it along with the other evidence.

In addition, the ALJ stated in his decision that he was adopting "the non-examining state agency mental health specialist's evaluation of Mr. Muñoz's mental status in regard to this examination and his other records." Tr. 21. In his memorandum, Muñoz claims the ALJ is referring to Exhibit 7F. Mem. in Supp. of Mot. to Reverse at 4. Exhibit 7F is the Physical

5

Residual Functional Capacity Assessment form completed by Dr. Donald B. Stewart.  Moreover, the ALJ does not cite to any exhibit.  However, it is clear from his decision that the ALJ is referring to Dr. Elizabeth Chiang's evaluation, Exhibit 3F (Mental Residual Functional Capacity Assessment) and 4F (Psychiatric Review Technique (PRT) Form).  Tr. 170-182.  Dr. Chiang is a psychiatrist and a nonexamining agency consultant.

As reflected in the PRT form, Dr. Chiang evaluated Muñoz under Listings 12.04, 12.06 and 12.09.  Tr. 174.  Dr. Chiang then completed the "B" criteria of the Listings and made the following findings: (1) "slight" restriction of activities of daily living; (2) "moderate" restriction in maintaining social functioning; (3) "often" had deficiencies of concentration, persistence or pace; and (4) "once or twice" had episodes of deterioration or decompensation.  Tr. 181.  Dr. Chiang found that Muñoz did not meet Listings 12.04 or 12.06.  Tr. 181, 182.  Because Dr. Chiang found no impairment, she did not reach the issue of "materiality."  Dr. Chiang indicated in her evaluation that she had reviewed Dr. Traweek's evaluation along with the other record evidence.  Tr. 172.  As noted above, these findings are specifically referenced by the ALJ in his decision.

On the other hand, Dr. Gabaldon's opinion was conclusory.   Dr. Gabaldon checked Listings 12.04, 12.06 and 12.09 on the PRT form (Tr. 234) and concluded that "Mr. Muñoz admits to long term substance use that is material."  Tr. 235.  However, Dr. Gabaldon failed to complete the "B" criteria of the Listings which rate the degree of impairment.  Tr. 241.  Instead, Dr. Gabaldon noted "Meets 12.09C."  Dr. Gabaldon did not document how he arrived at this conclusion and did not follow 42 U.S.C. § 423(d)(2)(C), which set forth the process required in determining whether drugs or alcohol are a contributing material factor to a claim of disability.  As more fully discussed below, a *finding of disability is a condition precedent* to finding that

6

substance abuse is a contributing material factor.  *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a) & 416.935(a).

The opinions of specialists related to their area of specialty are entitled to more weight than that of a physician who is not a specialist in the area involved.  See 20 C.F.R. § 404.1527(d)(5).  Moreover, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  SSR 96-6P, 1996 WL 374180 at *3.  Finally, if the physician's opinion is conclusory, the ALJ may find that other medical evidence in the record outweighs the opinion.  *See Hall v. Chater*, No. 95-5002, 1995 WL 747416, at *2 (10th Cir. Dec. 19 1995).  In this case, the ALJ adopted Dr. Chiang's evaluation.  This was proper since Dr. Chiang, a specialist in the area of psychiatry, reviewed the record and properly applied 42 U.S.C. § 423(d)(2)(C).

Next, Muñoz argues that the ALJ substituted his opinion for that of Dr. Traweek when he disregarded Dr. Traweek's opinion that if Muñoz terminated his substance abuse there would only be minimal improvement in his ability to work.  Additionally, Muñoz also claims the ALJ failed to adopt Dr. Gabaldon's opinion that Muñoz met Listing 12.09C but that the substance abuse was material.  The Court has already noted that Dr. Gabaldon's opinion was conclusory and properly weighed by the ALJ.

In 1996, Congress amended the Social Security Act to provide that '[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  Under the regulations,

the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol.  20 C.F.R. §§ 404.1535(b)(1) & 416.935(b)(1). Under this regulation, the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determined whether any or all of plaintiff's remaining limitations would be disabling.

The regulations make clear that a finding of disability is a condition precedent to an application of 42 U.S.C. § 423(d)(2)(C).  *See* 20 C.F.R.§§ 404.1535 & 416.935(a).  Therefore, the Commissioner must determine whether a plaintiff is disabled **prior** to finding that alcoholism is a contributing material factor. *Id.*  The ALJ must then determine whether plaintiff would still be found disabled if he or she stopped abusing alcohol.  20 C.F.R. § 416.935(b)(1).   If so, then the alcohol abuse is not a contributing factor material to the finding of disability.  20 C.F.R. § 416.935(b)(2)(ii).  If, however, the plaintiff's remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of disability.  20 C.F.R. § 416.935(b)(2)(i).

In his decision, the ALJ listed all of Muñoz' impairments, including his depression and anxiety, and found them not to be disabling.  Tr. 19.  The ALJ noted that Muñoz was not receiving any mental health treatment and then evaluated these impairments under Listings 12.04 and 12.06.  *Id.*  The ALJ also noted Dr. Traweek's objective findings that Muñoz was "alert, lucid, responsive and oriented, his thought processes were logical, goal-oriented and coherent with no psychotic features."  Tr. 20.  Notably, the ALJ stated that he "had discounted the medical

8

experts' opinions based, in whole, or in part, upon the symptoms and history testified to by the claimant." Tr. 22. In his evaluation, Dr. Traweek stated:

> Mood was described as depressed and assessed to be moderate, as he stated, 'I can't snap out of it, I look at my mom's picture and I just cry. She died in pain and had a tough life.' Additionally, he went on to say, 'I feel worthless, I had a good job before I was sick, I can't handle it, I don't know what's wrong with me.' He reported symptoms of anhedonia, social withdrawal and isolation, decreased concentration periodically, a vague sense of ill-boding, self-criticalness, a sense of shame about his position, low self-esteem an being overwhelmed by his overall diminished capacity. Neurovegetative symptoms of depression included sleep disturbance, initial onset and possible middle-of-the-night awakening, appetite increase with weight gain or (sic) approximately ten pounds in five months, lethargy and fatigue, periods of restlessness and pacing, persistent physical symptoms of chronic pain and headache. No suicidal ideation was reported, however, he did say, "Sometimes I think about it but I'm too scared to do it."
>
> In discussing the anxiety he experiences, he indicated, "you know I was shot in the leg in 1988, by a shotgun, and I was stabbed in 1990. I have flashbacks about all that and it really started getting bad about a year ago. You, know it's like I said, when I go to the market or go shopping, there's just too many people. It seems like they are all looking at me and I have to go back in the car and get home quick." He reported trembling and feeling shaky, muscle tension, headache, backaches, autonomic hyperactivity, a feeling of dread, panic, shortness of breath, paresthesias, fatigability, palpitations, increased urination and hyperviligance as anxiety symptoms.

Tr. 163-64. Dr. Traweek's evaluation relied extensively on Muñoz' reported symptoms and impairments. The ALJ considered Dr. Traweek's opinion regarding disability but found it speculative and concluded it was entitled to less weight because Muñoz had only maintained sobriety for a short period of time and because Muñoz exaggerated his complaints. The ALJ also noted that Muñoz never mentioned his panic attacks at the administrative hearing until "prompted by his representative." Tr. 21. The ALJ noted that Dr. Toner, a specialist in the area of occupational medicine, had suggested the presence of symptom magnification and had questioned

9

Muñoz' actual activity level.  Tr. 21.  Dr. Toner had  discredited most of Muñoz' physical complaints.  *See* Tr. 183-87.

Dr. Toner performed a disability evaluation on February 26, 2000.  Dr. Toner noted that Muñoz reported panic attacks but was unable to give a chronology as to how long they occurred. Tr. 184.  Dr. Toner also noted that Muñoz reported spending his day watching television and not going outside except to see his doctors.  *Id.*   Dr. Toner described Muñoz as "well-muscled," and "in no distress."   Tr. 185.  Dr. Toner stated that Muñoz' "complaints appear[ed] to be in excess of any physical findings."  Tr. 186.  Dr. Toner also opined that Muñoz may not be totally credible because "his muscle-build indicates to me that he is far more active than he states he is, as far as just sitting around and watching television all day long."  Tr. 187.  For these reasons, the ALJ gave less weight to Dr. Traweek's opinion regarding Muñoz' disability.  Instead, the ALJ adopted Dr. Chiang's opinion that Muñoz did not meet Listings 12.04 and 12.06.  Because the ALJ found that Muñoz did not meet Listings 12.04 and 12.06, he did not have to reach the issue of "materiality."  Accordingly, the Court finds that the ALJ properly considered the issue of Muñoz' substance abuse as set forth in the regulations, gave legitimate reasons for giving less weight to Dr. Traweek's opinion regarding Muñoz' disability, and he did not err in adopting Dr. Chiang's opinion.

In the alternative, the ALJ found that even, if he had found that Muñoz had disabling impairments, he would have easily established  "a close nexus between  substance abuse and many of his physical and mental problems."  Tr. 22.  The Court has carefully reviewed the record and finds that substantial evidence would support this finding.

## B.  Credibility Determination

Muñoz contends the ALJ's credibility determination is not supported by substantial evidence and is contrary to law.  Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).  "Because [e]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court, we generally treat credibility determinations made by an ALJ as binding upon review."  *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990)(internal quotations omitted).

In this case, the ALJ gave specific and legitimate reasons for his credibility determination. The ALJ cited to Dr. Toner's evaluation and found Muñoz had not been forthcoming with Dr. Toner.  The ALJ took note of Dr. Toner's suggestion regarding the presence of symptom magnification.  Dr. Toner's evaluation supports this finding.  *See* Tr. 183-87.  Dr. Toner found:

> This claimant's complaints appear to be in excess of any physical findings.  He does have decreased range of motion to his right shoulder and a history of surgery here.  I do not have any medical records or x-rays to determine whether or not he has any degenerative changes here, that would indicate that he cannot move this shoulder more.  His weakness to his hand, and the paresthesia to his arm is nonphysiologic.  He also has inconsistencies in his straight-leg raising test, and his muscle-build indicates to me that he is far more active than he states that he is, as far as sitting around and watching television all day long.

Tr. 186.  The ALJ also considered the objective medical evidence in finding Muñoz not credible. The ALJ found that he did not credit Muñoz' statements regarding the severity of his impairments because he was "not being actively treated for hepatitis, arthritis, gout, pulmonary or mental

11

health problems." Tr. 21. The Court cannot say that substantial evidence does not support the ALJ's credibility determination. Accordingly, for the foregoing reasons, the Court finds that the ALJ's finding that Muñoz is not disabled is supported by substantial evidence.

    A judgment in accordance with this Memorandum Opinion will be entered.

 

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**